The facts of the case, and the points determined, will be found in the opinion of the court, delivered by
PIoenblower, C. J.
The object of this Certiorari is to set aside the execution issued on the judgment rendered in this cause. Kipp, the plaintiff in Certiorari, was sued by summons. On the 9th of March, 1844, Chamberlin et al. recovered a judgment against him before the justice, for $51.30 of debt, and $1.68 of costs.
On the 21st of March of the same year, Adam B. Gold wait, one of the plaintiffs, made affidavit before a Supreme Court *657 commissioner, that Kipp the defendant held rights in action, which he fraudulently concealed; that he had disposed of his property, which he had in trade in the city of Trenton, with intent to defraud Ms creditors; that he had moneys in his own possession of the value of ten dollars and over, which he unlawfully and unjustly refused to apply to the payment of the said judgment.
On the 23d of March, Wm. P. Sherman affirmed, that Kipp, about three weeks previous thereto, told him, that he had sold out his stock of goods to his brother, who was in town and was about to take possession; that his brother did not owe him any thing; that in December then last, Kipp told him he was not going to leave Trenton; that he had property enough to pay all his debts, but at the same time, intimated that he meant to take his own time.
On the same day, Joshua Jones made an affidavit, in which he swore that in December then last, he made an exchange of goods with Kipp; that about the last of January, or the first of February, he was at the store of Kipp, that in the course of conversation Kipp then stated, that he was not going to leave Trenton as soon as some people expected; that the court was coming on, and he meant to sell out before court; that he asked Kipp what he would take; and that Kipp replied, he did not want to sell to him.
Upon these affidavits, the justice, on the 23d of March, 1844, made the following entry upon his docket. “ Satisfactory proof being made, that the defendant holds rights and credits, which he fraudulently conceals; that he has disposed of his property, which he had in trade in the city of Trenton, with the intent to defraud his creditors; that he has money in his' own possession of the value of $10 or more, which he unlawfully and unjustly refuses to apply in payment of the judgment, 1 do therefore issue execution against his body.”
In the first place the execution is entirely wrong. It is an execution on a judgment for $41.30 of debt, and $1.68 of costs; whereas the judgment was for $51.30 of debt, besides costs.
In addition to this, it is a very extraordinary, if not an entirely unlawful writ. It commands the constable, “for want of suffi *658 cient goods and chattels, whereon to levy and make the mm,” to receive “ a true, and perfect inventory, under oath, of all the defendant’s goods and chattels, and a bond conditioned &c.” according to the provisions and directions of a certain statute, passed, &c.; and in case of failure to execute such inventory and bond, then to take the defendant, &c.
This execution is a novelty, and its command unauthorized and unlawful. The act constituting courts for the trial of small causes, prescribes the command of the execution and the justice has no right to depart from it, except as directed by a subsequent law. ■ There is no law directing the justice to command the constable, by his execution, to take an inventory and bond &c. That is a duty the law prescribes to the officer, under certain circumstances.
But to recur to the affidavits. In the first place, the affidavit of.Goldth waite, one of the plaintiffs, must be laid out of the case. It proves nothing, but if it did it would be inadmissible. This has been decided over and over again, I dismiss this affidavit with a single remark. In these affidavits, the affiants, who seldom if ever, draw their own affidavits, are made to swear to conclusions of law. Thus, this man swears, that Kipp had disposed of his property, “ with intent to defraud his creditors.” This he could not properly swear to. He could only swear to facts from which the law would or might draw that conclusion. If a witness heard a man say, “ he had disposed of his property with intent to defraud his creditors,” this is all he could and ought to swear to, and leave the law to draw its own conclusion.
This very term, similar affidavits, to a painful extent, have been laid before the court; in which the affiants have sworn, not to facts justifying the conclusion of law, but to the conclusion itself: for instance, that the debtor has unlawfully and umjustly refused to apply funds to the payment of his debt; or that he has removed, or concealed, or is about to remove his property, “ with intent to defraud his creditors.” This is all wrong, and commissioners and others, who draw such affidavits, ought to avoid it.
But the question in this case is, whether there is any thing in the affidavits of Mr. Sherman and Mr. Jones, going- to prove the conclusions to which the justice came. I think not. It would *659 not have been evidence, standing alone, to be left to a jury on an issue, whether the defendant had fraudulently concealed his property with intent to defraud his creditors; or had “ unlawfully and unjustly refused to pay money, he had in his possession.”
The execution set aside.
Whitehead, J. concurred. The other Justices did not hear the argument.
Cited in Chumar v. Kennedy, 2 Dutcher 306; Bowne v. Titus & Scudder, 1 Vr. 343.